**SO ORDERED.**

**SIGNED this 14 day of August, 2008.**



_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **LORENZO DOMINIC RICHARDSON** | **07-01504-5-ATS** |
| DEBTOR | |
| | |
| **LORENZO DOMINIC RICHARDSON** | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | S-07-00096-5-AP |
| **NORTH CAROLINA STATE EDUCATION ASSISTANCE AUTHORITY** | |
| Defendant. | |

**MEMORANDUM OPINION**

The trial of this adversary proceeding to determine, pursuant to 11 U.S.C. § 523(a)(8), the dischargeability of student loans owed by the chapter 7 debtor, Lorenzo Dominic Richardson, to the North Carolina State Education Assistance Authority ("NCSEAA"), was held in Raleigh, North Carolina on August 12, 2008.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference

entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

Lorenzo Dominic Richardson filed a pro se petition for relief under chapter 7 of the Bankruptcy Code on July 13, 2007. On July 30, 2007, he filed, without the assistance of counsel, the complaint in this adversary proceeding pursuant to 11 U.S.C. § 523(a)(8) to discharge his student loans.[1] Pursuant to a master promissory note dated April 26, 2005, Mr. Richardson borrowed funds that he used to earn a certificate in Digital Audio Production and Design I from the School of Communication Arts. The balance of the loans as of August 12, 2008, is $7,138.10, including principal of $6,142.20, interest of $398.90, and projected fees of $597. Ex. 46, Affidavit of Wayne E. Johnson. Mr. Richardson seeks a discharge of the debt, contending that the loans are not valid and that excepting the loans from discharge will create an undue hardship. The court entered an order granting partial summary judgment in favor of NCSEAA with respect to the validity of the debt on May 14, 2008, leaving for trial the issue of undue hardship.

Section 523(a)(8) provides that "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents," the following debts may not be discharged:

> (A)(i)  an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or

---

[1] The complaint was initially filed against College Foundation, but NCSEAA was allowed to intervene as the proper party on September 25, 2007.

>   (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8). There is no dispute that the student loans made by the defendant in this adversary proceeding are the type of loans that would be not be discharged if the debtor cannot establish an "undue hardship."

Section 523(a)(8) of the Bankruptcy Code makes it extremely difficult for debtors to discharge student loans. "Debtors receive valuable benefits from congressionally authorized loans, but Congress in turn requires loan recipients to repay them in all but the most dire circumstances." Educational Management Corp. v. Frushour (In re Frushour), 433 F.3d 393, 399 (4th Cir. 2005) (citing Pa. Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F.3d 298, 306 (3d Cir. 1995)). Debtors must show "exceptional circumstances," and must prove that "they are in the *limited class* of debtors for which § 523(a)(8) is meant to allow discharge." Educational Credit Mgmt. Corp. v. Mosko (In re Mosko), 515 F.3d 319, 324 (4th Cir. 2008) (citing Frushour, 433 F.3d at 404) (emphasis added in Mosko). "Congress sought to ensure repayment of educational loans through its use of the term 'undue' and the courts are obligated to follow its imperative." Frushour, 433 F.3d at 396. A "garden-variety hardship" is an "insufficient excuse for a discharge of student loans." Frushour, 433 F.3d at 399 (quoting Rufino v. United States (In re Rufino), 245 F. 1083, 1087 (9th Cir. 2001)). See Vujovic v. Direct Loans (In re Vujovic), 388 B.R. 664 (Bankr. E.D.N.C. 2008).

The term "undue hardship," as used in § 523(a)(8), is not defined, but most courts have looked for guidance to the three-part Brunner test developed by the United States Court of Appeals for the Second Circuit more than twenty years ago in Brunner v. New York State Higher Education Services, 831 F.2d 395 (2d Cir. 1987). The Court of Appeals for the Fourth Circuit applies the

3

Brunner test. See Ekenasi v. Education Res. Inst. (In re Ekenasi), 325 F.3d 541 (4th Cir. 2003) (adopting the Brunner test in chapter 13 cases); Frushour, 433 F.3d 393 (adopting the Brunner test in chapter 7 cases). The Brunner test requires debtors to establish, by a preponderance of the evidence, the following factors:

> (1) they cannot maintain, based on current income and expenses, a minimal standard of living for themselves and their dependent[s] if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of their student loans; and (3) they have made good-faith efforts to repay their student loans.

Mosko, 515 F.3d at 323. A debtor must meet all three of the Brunner standards for the debtor's student loans to be dischargeable.

Mr. Richardson meets the first prong of the Brunner test because he can not, based on his current income and expenses, pay his student loans while maintaining a minimal standard of living for himself. Mr. Richardson is currently unemployed, and he has been only periodically employed in temporary jobs since he obtained his certificate from the School of Communication Arts on June 22, 2006. He does not appear to have obtained any employment related to the certificate, but instead has worked a number of warehouse jobs. Due to the nature of the temporary employment, most of Mr. Richardson's jobs have lasted only a few days or a couple of weeks, and he testified that he has worked at most a month and a half in 2008. He receives $162 per month in food stamps, and he has no assets except a fully-encumbered vehicle. Mr. Richardson lived with his parents until recently, did not pay rent and did not contribute to the costs of utilities.[2] He was unable to pay the filing fee

---

[2] Mr. Richardson received a $3,000 workers compensation settlement in July 2008. He used the funds to rent an apartment, paying 2 months' rent in advance and signing a 6-month lease at $575 per month.

4

in this case, and was unable to hire an attorney to represent him in the case and in this adversary proceeding.

Mr. Richardson's only scheduled monthly expenses include a car payment of $400, which has been reduced to $333 pursuant to a reaffirmation agreement; $200 for food; $50 for clothing; $275 for transportation, car taxes and car insurance; $20 for recreation; $50 for charitable contributions; and $50 for payments for his daughter (though he testified in his deposition that he is not required to pay child support, and he is currently not making any contributions toward his daughter's needs). Though his expenses are minimal, he has difficulty meeting those needs due to his lack of income, and he is, in fact, behind on his car payments. Because of Mr. Richardson's lack of income and assets, he has shown an inability to meet a minimal standard of living if he is forced to repay the loans.

The second Brunner prong is often the most difficult of the three prongs to prove. It requires debtors to show that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of their student loans." Mosko, 515 F.3d at 323. Courts have described this factor as requiring "'a total incapacity . . . in the future to pay [the debtor's] debts for reasons not within [the debtor's] control.'" Gerhardt, 348 F.3d at 92 (quoting In re Faish, 72 F.3d 298, 307 (3d Cir. 1995)). The Court of Appeals for the Fourth Circuit has observed that the second Brunner prong presents "'a demanding requirement,' . . . and necessitates that a 'certainty of hopelessness' exists that the debtor will not be able to repay the student loans." Frushour 433 F.3d at 401 (quoting Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful, 267 F.3d 324, 328 (3rd Cir. 2001). According to the Frushour court, "[o]nly a debtor with rare circumstances will satisfy this factor." Frushour, 433 F.3d at 401.

Mr. Richardson contends that his circumstances are not likely to change. He believes that the certification he received from the School of Communication Arts is worthless because he has been unable to find a job in the fields of music production and graphic design. According to the debtor, he is has been listed with employment agencies and has unsuccessfully applied for hundreds of jobs. Mr. Richardson believes he has been "blacklisted" from employment in the Raleigh area as a result of "standing up for what he believes in," though his only evidence of this is that he has been unable to find work. He has had difficulty keeping jobs, either because the jobs are intended to be temporary or because he has been fired or laid off. He attributes some of this to his criminal record, which consists of 2 misdemeanor bad check charges and a misdemeanor conviction for carrying a concealed weapon. Mr. Richardson also maintains that he has a back injury from a prior job that limits his employment options, but he admits that the back injury would not prevent him from working in the field in which he was trained. His belief that his situation is likely to persist is based primarily on his past experience in the job market.

Mr. Richardson is 25 years old and has a high school education plus the certificate in Digital Audio Production and Design I. He has no physical disability other than the back injury for which he attributes a 20% disability rating, and which he agrees does not significantly impair his employment options. All of his debts have been discharged except for the student loan, which has a balance of $7,138.10. The monthly loan payments are only $89 per month, and even that amount could be reduced if his loans were consolidated.

A significant problem for Mr. Richardson, by his own admission, seems to be his attitude toward his ability to find or maintain employment. He believes that he has been "blacklisted" and is the object of discrimination. The debtor is apparently quick to complain when he believes he has

been treated unjustly, and he believes that this accounts for his lack of employment security. Although his courtroom demeanor was respectful, the pleadings he has filed show the depth of his anger, and it appears that Mr. Richardson's situation stems in part from his negative expectations and the argumentative, sometimes combative attitude that accompanies them.  These aspects of Mr. Richardson's current mindset are very likely interfering with his ability to acquire and retain employment, and hopefully Mr. Richardson will investigate any resources and counseling available to him in order to alleviate these obstacles.  Fortunately, there are many books, courses, and counseling available to someone with an argumentative disposition, and usually a combative attitude can be kept under control unless caused by a mental health condition.  The court is not suggesting that that is the case here, but even if it were, help is available.[3]  The court finds that Mr. Richardson has not demonstrated that his situation is hopeless and that he will not be able to find steady employment in the future.

The third Brunner prong requires a debtor to have made good faith efforts to repay the debtor's student loans.  One aspect of that inquiry involves review of the debtor's payment history

---

[3] The court makes no suggestion that Mr. Richardson's employment issues are related to mental health issues, though a debtor's mental health often is a factor in student loan cases.  The court's website, www.nceb.uscourts.gov, has mental health information including where low income individuals can obtain mental health services. Mental illness has been a factor in a number of student loan cases before this court.  See Stevens v. Education Credit Management Corp. (In re Stevens), Adv. Pro. No. S-04-00038-5-AP (Bankr. E.D.N.C. April 8, 2005); Hudson v. U.S. Dep't of Education, Direct Loans (In re Hudson), Adv. Pro. No. S-02-00160-5-AP (Bankr. E.D.N.C. Mar. 12, 2004); Blanchard v. EFG Technologies (In re Blanchard), Adv. Pro. No. S-01-00049-5-AP (Bankr. E.D.N.C. April 25, 2003).  Mental illness and its effect on future employment is very difficult to prove and usually requires expert testimony.  This court has established a pro bono panel of mental health experts who are available, at no cost to debtors, on application, to evaluate debtors and provide testimony on these issues for the court's consideration.  The debtors in the Stevens and Hudson cases both took advantage of this program in conjunction with their efforts to discharge their student loans.

and the debtor's use of loan consolidation options.  Frushour, 433 F.3d at 402.  Mr. Richardson has made no payments toward this debt, but the loans, which were not payable while he was in school, had not come due as of the petition date and technically Mr. Richardson was not in default when he filed for bankruptcy protection.  Mr. Richardson was given the option to consolidate his loans, but he refused, contending that consolidation is merely an opportunity for lenders to collect more interest, and confers no benefit on debtors.

Several Circuit Courts of Appeals, including the Court of Appeals for the Fourth Circuit, also include in the third Brunner prong an examination of the debtor's "efforts to obtain employment, maximize income, and minimize expenses.'" Frushour, 433 F.3d at 402 (quoting O'Hearn v. Educ. Credit Mgmt. Corp., 339 F.3d 559, 564 (7th Cir. 2003)).  This component of the third Brunner prong frequently overlaps with the analysis of the second prong, under which the court must determine whether the debtor's state of affairs is likely to persist.  See, e.g., In re Gerhardt, 348 F.3d 89, 93 n.3 (5th Cir. 2003).  As noted above, the court is not persuaded that Mr. Richardson's employment situation is likely to persist into the future, and Mr. Richardson has not met his burden of proof of the third element of the Brunner test.

Because Mr. Richardson has not met elements two and three of the Brunner test, he has not shown that not discharging the student loans would cause an "undue hardship."  Consequently, the court concludes that the student loans are not excepted from discharge under § 523(a)(8).

However, as the court has done in several other student loan proceedings, the court will give the debtor an opportunity to have this decision reconsidered in the future based on changed

8

circumstances provided that the debtor makes a request for reconsideration between December 1, 2009, and January 29, 2010.[4]

Judgment shall be entered accordingly.

**END OF DOCUMENT**

---

[4] The court has provided for reconsideration in several student loan cases. See Hudson v. U.S. Dep't of Educ. (In re Hudson), Adv. Pro. No. S-02-00160-5-AP (Bankr. E.D.N.C. Mar. 12, 2004); Hundley v. Sallie Mae Servicing Corp. (In re Hundley), Adv. Pro. No. S-02-00010-8-AP (Bankr. E.D.N.C. Feb. 18, 2003); Vujovic v. Direct Loans (In re Vujovic), 388 B.R. 664 (Bankr. E.D.N.C. 2008).